UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09-cv-447-RJC

| | |
|---|---|
| **DANDY DEWIGHT SANDERS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     <u>ORDER</u> |
| | ) |
| **FNU DAVIS, et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendants' Motions for Summary Judgment (Doc. Nos. 25; 34).[1] Also before the Court is Defendant Earley's Amended Motion for Protective Order. (Doc. No. 40).

I. **BACKGROUND**

    A. <u>Procedural Background</u>

On December 10, 2009, Plaintiff filed this action under 42 U.S.C. § 1983, naming the following persons as Defendants: Sergeant Mark Davis ("Davis"), Captain Phyllis Sims ("Sims"), Chief Deputy Danny Gordon ("Gordon"), and Sheriff Raymond Hamrick ("Hamrick"), all from the Cleveland County Sheriff's Office, and Christal Earley ("Early"), a nurse at the Cleveland County Jail and an employee of Southern Health Partners[2] (collectively,

---

[1] In accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the necessity of filing responses to both motions and of the manner in which evidence could be submitted to the Court. (Doc. No. 38). On June 17, 2010 and March 9, 2011, Plaintiff filed his Responses. (Doc. Nos. 27; 42).

[2] Plaintiff sued Defendants in their individual and official capacities. Plaintiff's official capacity claims against Sergeant Mark Davis, Captain Phyllis Sims, and Chief Deputy Danny Gordon are claims against Sheriff Hamrick. See <u>Thomas v. Holly</u>, No. 5:10-cv-52-BO, 2010 WL 3063205, at *2 (E.D.N.C. Aug. 4, 2010) (noting that, because in North Carolina the office of sheriff is a distinct legal entity, and deputy sheriffs are employees of the sheriff, official capacity

"Defendants"). (Doc. No. 1 at 3). Plaintiff alleges that while he was a pre-trial detainee at the Cleveland County Jail Annex ("Jail Annex" or "jail"), Defendants failed to protect him from an assault committed on February 15, 2009 by Plaintiff's cell mate Anthony Hopper ("Hopper"). Plaintiff also alleges that he had pre-existing back injuries and that Defendants deliberately failed to protect his health and safety by allowing Plaintiff's bed mattress to be taken away during the daytime for 26 days due to the fight between Plaintiff and Hopper.

In their pending motion for summary judgment, (Doc. No. 25), Defendants Davis, Sims, Gordon, and Hamrick contend that Plaintiff did not exhaust his administrative remedies with regard to his failure to protect claim related to Plaintiff's fight with his cell mate Hopper. Defendants Davis, Sims, Gordon, and Hamrick further contend that they are entitled to summary judgment on the merits of Plaintiff's claim related to the confiscation of his mattress. In her own motion for summary judgment, (Doc. No. 34), Defendant Earley adopts the other Defendants' contentions regarding exhaustion of administrative remedies, and further contends that she is entitled to summary judgment on the merits of Plaintiff's claim related to the confiscation of his mattress.

B. Factual Background

The following facts are undisputed, unless otherwise noted by the Court: In February 2009, Plaintiff was incarcerated as a pre-trial detainee at the Cleveland County Jail Annex. Anthony Hopper was Plaintiff's cell mate. According to Plaintiff, on February 9, 2009, he complained to Defendant Davis in writing that Hopper was taking Plaintiff's meals and

---

claims against deputy sheriffs are, in fact, claims against the sheriff). Furthermore, the parties appear to assume, and it also appears to the Court, that Defendant Earley was acting under color of state law in her capacity as a nurse treating inmates at the Cleveland County Jail.

threatening to beat Plaintiff up if he told anyone, and Plaintiff asked to be moved to another cell because he feared for his safety. (Doc. No. 41: Decl. of Sanders at ¶ 2). According to Plaintiff, Davis took no action on these requests. Davis denies that Plaintiff ever informed him that Plaintiff feared for his safety due to Hopper's threats to beat him up. (Doc. No. 25-2: Davis Decl. at ¶ 8).

On February 15, 2009, Hopper and Plaintiff fought with each other and both men were taken to the local hospital to have Mace washed off of their bodies. Plaintiff contends that Hopper attacked Plaintiff, whereas Defendants characterize the altercation between Plaintiff and Hopper as being the fault of both men. (Doc. Nos. 41: Decl. of Sanders at ¶ 3; 25-2: Davis Decl. at ¶ 9). An emergency room note states that Plaintiff was treated for Mace exposure and that he had "a small laceration just below the hairline." (Doc. No. 27 at 12).

According to Plaintiff, he informed the hospital doctor that the jail had a policy of taking mattresses away from prisoners as punishment for fighting in the jail, and Plaintiff told the doctor about his "pre-existing lumbar disc injur[ies]." (Doc. No. 41: Decl. of Sanders at ¶ 4). Plaintiff alleges that the hospital doctor "stated he would put it in the medical records that due to plaintiff's back injury, his mattress should not be taken away." (Doc. No. 1 at 6, ¶ 8). Plaintiff also contends that the doctor instructed Officer Steven Norris that Plaintiff's mattress should not be taken away. (Doc. No. 41: Decl. of Sanders at ¶ 4). Plaintiff states that as he and Officer Norris were leaving the hospital, Norris stated that it did not matter what the doctor had stated about Plaintiff's mattress, as it would be up to the jail's medical staff as to whether Plaintiff's mattress would be taken away. (Doc. No. 42: Decl. of Sanders at ¶ 4). An emergency room note from Plaintiff's February 15, 2009 hospital visit indicates that Plaintiff complained to the emergency room doctor of a past medical history of lumbar disc problems. (Doc. No. 36-2).

3

The note does not indicate, however, a present complaint of back pain. (Id.).

When Plaintiff returned to the Jail Annex, jail officials placed him in security lockdown for thirty days for violating jail policy against fighting. (Doc. No. 25-2: Davis Decl. at ¶ 10). As part of the lockdown, jail officials removed Plaintiff's mattress each day from 6:45 a.m. to 6:45 p.m. (Id.). Plaintiff contends that because he was not allowed to use his mattress 12 hours out of each day when he was on lockdown, he suffered migraines, blurred vision, memory loss, and chronic back pain. (Doc. No. 1 at 5, ¶ 11).

Defendant Earley evaluated Plaintiff at the jail on February 17, 2009, two days after Plaintiff's fight with Hopper. Plaintiff reported to Earley that he had an old L1/L2 injury and he asked for a doctor's order prohibiting jail officials from taking away Plaintiff's mattress as punishment. (Doc. No. 36-1). Earley explained to Plaintiff that she had no control over jail disciplinary rules. (Doc. No. 36: Aff. of Earley at ¶ 9). According to Earley, Plaintiff became hostile and aggressive, requiring Earley to ask the guards to take Plaintiff back to his cell. (Id.). Earley attests that, before Plaintiff filed this lawsuit, she had no knowledge of Plaintiff's February 15, 2009 emergency room visit, and she had not seen any medical records from that visit. (Id. at ¶ 4). Earley further states that she saw no medical evidence that would have required Plaintiff to have 24-hour access to a mattress because of his back problems. (Id. at ¶ 8).

In response, Plaintiff has attached a grievance dated January 29, 2009, and signed by Defendant Earley, to show that Earley knew about his back problems when she evaluated him. In the grievance, Plaintiff complained of not receiving medical screening since his arrival at the jail. He also stated in the grievance that the discs in his lower back were bulging with nerve damage and that his back pain had been exacerbated when his mattress was taken away from him during a previous stay in the jail. (Doc. No. 42 at 5). Plaintiff further stated in the January 29,

4

2009 grievance that the lack of a mattress during that time "irritated my back injury and the pain has been well over 10" since that time. (Id. at 6).

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> (c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

5

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted) (quoting FED. R. CIV. P. 56).

## III. DISCUSSION

### A. Failure to Protect Plaintiff from Cell Mate

Defendants first contend that the jail's grievance records do not reflect that Plaintiff submitted any grievances regarding Defendants' alleged failure to move him to another cell away from Anthony Hopper because Plaintiff feared for his safety. In his Declaration, Defendant Davis states that he has received two requests from Plaintiff to move to another cell, but that neither request stated that Plaintiff feared for his safety. (Doc. No. 25-2: Davis Decl. at ¶¶ 6-7). The first request, on February 6, 2009, stated that Plaintiff wanted to move to a different cell because of Hopper's "major gas problem 24/7 non-stop." (Doc. No. 25-5: Ex. C to Davis Decl.). In the second request, dated February 12, 2009, Plaintiff asked to be moved from his cell because he "cannot take the nastyier [sic] than nasty gas from my cell mate." (Doc. No. 25-6: Ex. D to Davis Decl.). Defendant Davis deemed these grievances to be frivolous and therefore

6

did not respond to them. Defendants contend that, other than these two grievances, Plaintiff never complained to Davis, in a grievance or otherwise, that he feared for his safety with Hopper as his cell mate. (Doc. No. 25-2: Davis Decl. at ¶ 8). Defendants contend that Plaintiff has therefore failed to exhaust his administrative remedies under the PLRA with regard to his failure to protect claim.

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life . . . ." 534 U.S. 516, 532 (2002). In Woodford v. Ngo, the Supreme Court stated that "[p]risoners must exhaust all 'available' remedies, not just those that meet federal standards." 548 U.S. 81, 85 (2006). The Court further explained that proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90. Thus, exhaustion is mandatory, and unexhausted claims may not be litigated in federal court. Jones v. Bock, 549 U.S. 199, 211 (2007).

The Cleveland County Sheriff's Office has a formal written grievance policy. (Doc. Nos. 25-2: Davis Decl. at ¶ 3; 25-3). When inmates are incarcerated at the jail, they receive an inmate handbook listing the jail's policies and procedures. (Doc. No. 25-2: Davis Decl. at ¶ 5). If an inmate has a grievance, the inmate requests a grievance form, fills out the form, and places the form in a locked box. (Doc. Nos. 25-2: Davis Decl. at ¶ 3; 25-3). The jail sergeant or grievance officer reviews and investigates the grievance and provides a written response to the inmate within ten days of receipt of the grievance. (Id.). An inmate may appeal this response if the

7

inmate is not satisfied with it. (Id.).

In his response to the summary judgment motion filed by Defendants Davis, Gordon, Hamrick, and Simms, Plaintiff contends that he submitted a grievance before his fight with Hopper in which he detailed his fear of being harmed by Hopper. (Doc. No. 27 at 17). Plaintiff attached a grievance form to his response brief as Exhibit H. (Doc. No. 27 at 18). The grievance is dated February 14, 2009, the day before Plaintiff's fight with Hopper, and Plaintiff states as follows in an attachment to the form: "I have written 3 request[s] explaining that I needed to be moved due to my cell mate's gas problem and now the disrespect has advanced to him taken [sic] my food and threat[en]ing to hurt me. I am scared for my safety please move me. I am sending a copy of this to my mother." (Id.). The grievance form's "Administrative Action" section, where the prison official typically writes a response to the grievance, is blank. (Id.).

In response to Plaintiff's contention that he submitted the grievance identified as Exhibit H, Defendant Davis attests in a Declaration that he never received any grievance identified as Plaintiff's Exhibit H and that Plaintiff's Exhibit H was not in Plaintiff's inmate file. (Doc. No. 31-3: Decl. of Davis at ¶ 3). Davis states that upon receipt of a grievance, it was his practice to write down the response on the "Administrative Action" portion of the grievance, and return it to the inmate. Davis states that it was also his practice to make a copy of the grievance, along with the "administrative action," and place it in the inmate's file. (Id. at ¶ 5). Finally, Davis attests that Plaintiff never informed him that Plaintiff feared for his safety with Hopper as his cell mate. (Id. at ¶ 6).

The Court finds that Plaintiff did not submit the grievance form labeled as Exhibit H. See Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) ("Instances exist - such as those involving jurisdictional issues - when judges may resolve factual questions. One such instance is when a

judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies."); Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003) ("In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."). The Court arrives at its conclusion based on the evidence of record. First, all of the other requests/grievances presented as evidence by Plaintiff in this lawsuit, and all of the requests/grievances presented by Defendants, contain a stamp or handwritten notation of the date received in the top right corner. The requests/grievances also indicate how the grievance was handled in the "Administrative Action" section. For instance, the two requests in which Plaintiff complained about Hopper's gas, dated February 6, 2009, and February 12, 2009, contain either a date stamp or a handwritten date in the top right corner. Furthermore, there is a handwritten notation in the "Administrative Action" section, stating "No response to this Request" and "No Response."[3] See (Doc. Nos. 25-5; 25-6). By contrast, Plaintiff's Exhibit H contains neither a date stamp nor a handwritten notation in the Administrative Action section. Furthermore, despite the fact that Plaintiff produced to the Court copies of other grievances he submitted to the jail in January 2010, he did not produce Exhibit H until June 2010, after Defendants had filed their summary judgment motion asserting their arguments regarding Plaintiff's failure to exhaust administrative remedies. See (Doc. Nos. 15; 27). The Court finds that Plaintiff failed to present sufficient evidence on summary judgment to show that he exhausted his administrative remedies with respect to his failure to protect claim.[4]

---

[3] As noted, supra, Davis did not respond to these requests because he deemed them to be frivolous.

[4] Plaintiff has not shown that Defendants knew or should have known that Plaintiff was subject to a risk of harm or that Plaintiff suffered an objectively serious risk of harm. As discussed, Defendants contend that Plaintiff did not complain to them that he feared for his

9

B.      Deliberate Indifference to Plaintiff's Health or Safety

In Farmer v. Brennan, the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[5] 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1992)). This is a low standard, as the Supreme Court emphasized that "[p]rison conditions may be restrictive and even harsh." Id. at 833 (internal quotations omitted). To sustain an Eighth Amendment claim, a prisoner must show (1) that objectively the deprivation was sufficiently serious—that is, the deprivation must be a "denial of the minimal civilized measure of life's necessities" and (2) that the defendant was deliberately indifferent to the prisoner's health or safety. Id. at 834 (internal quotations omitted). Thus, "[d]eliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt.

---

safety before the fight with Hopper. Defendants further note that Plaintiff had only a small scratch on his head after the fight. (Doc. No. 25-8: Norris Decl. at ¶ 3). Plaintiff was taken to the hospital, not because he suffered any injury during the fight, but because his eyes needed to be decontaminated from the pepper spray administered to break up the fight. (Id. at ¶ 4). Other than treatment for the pepper spray, Plaintiff received no medical treatment at the hospital. (Id. at ¶¶ 5-6). Defendants contend that, as a result, Plaintiff has failed to show he suffered an objectively serious risk of harm. Because Plaintiff has failed to exhaust his administrative remedies with respect to his failure to protect claim, this Court does not address the merits of this claim.

[5] Due to his pre-trial detainee status, Plaintiff's constitutional claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. However, as a practical matter, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pre-trial detainee's Section 1983 claim. See Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

10

Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001).

Defendants Davis, Gordon, Hamrick, and Simms contend that they are entitled to summary judgment as to Plaintiff's claim alleging deliberate indifference to his health or safety arising out of the confiscation of his mattress. For the following reasons, the Court agrees.

First, in their brief in support of the motion for summary judgment, Defendants explain that the Sheriff's Office has two types of lockdowns at the Jail Annex – administrative and security. (Doc. No. 25-2: Davis Decl. at ¶ 4). Administrative lockdown is for the purpose of keeping an inmate away from other inmates to protect the inmate's safety and well-being, or other inmates' safety. (Id.). Security lockdown is used to maintain the safety and security of the facility, as well as the safety and security of all inmates. (Id.). An inmate may be placed on security lockdown when he or she violates Sheriff's Office rules. (Id.).

The Jail Annex has three categories of violations that can lead to discipline. (Id. at ¶ 5). The most serious of these violations is a level three violation, which is imposed to maintain safety, security for the facility, and care of all inmates. (Id.). As a result of his fight with Hopper, Plaintiff was placed on a level three violation and lost his mattress from 6:45 a.m. to 6:45 p.m. (Id. at ¶ 10; Ex. B). Plaintiff had his mattress each day from 6:45 p.m. to 6:45 a.m. (Id. at ¶ 10).

The Court finds that, in confiscating Plaintiff's mattress during daylight hours, Defendants were not acting with deliberate indifference to Plaintiff's health or safety. "[P]reserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979). Plaintiff was placed on mattress restrictions in order to maintain the safety and security of the Jail Annex. Restrictions such as these are constitutionally permissible. See Gannaway v. Berks Cnty. Prison, No. 09-4501, 2011 WL 1196905, at *6 (E.D. Pa. Mar. 31, 2011)

11

(no constitutional violation where the plaintiff's mattress was confiscated 16 hours out of the day where plaintiff contended that he suffered from back problems). Furthermore, there is no evidence that a doctor ordered that Plaintiff required a mattress 24 hours a day after he returned from the hospital. (Doc. No. 25-8: Norris Decl. at ¶ 6). Additionally, Plaintiff has not produced any medical evidence to show that his back problems were exacerbated by the confiscation of his mattress.

The Court further notes that, as to Defendants Gordon, Sims, and Hamrick, Plaintiff has produced no evidence to show that these Defendants acted personally to deprive Plaintiff of his constitutional rights. Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (stating that to establish individual liability under Section 1983, a plaintiff must affirmatively show that the "official charged acted personally in the deprivation of the plaintiff's rights"). Here, Gordon, Sims, and Hamrick played no role in making the decision to take away Plaintiff's mattress during the day. In fact, the only allegation against Gordon and Sims is that they met with Plaintiff's mother after Plaintiff was on lockdown and denied Plaintiff's mother's request that the mattress be returned to Plaintiff. (Doc. No. 1 at 5, 10). There are no allegations of any kind against Hamrick in the Complaint. Thus, even if the Court were to find that depriving Plaintiff of a mattress during daylight hours somehow violated Plaintiff's constitutional rights, summary judgment would still be proper as to Gordon, Sims, and Hamrick.

There is also no basis for the imposition of supervisory liability against Gordon, Sims, or Hamrick. To demonstrate supervisor liability under Section 1983, Plaintiff would have to show that Gordon, Sims, or Hamrick had actual or constructive knowledge that their subordinates, such as Davis, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, that their response was inadequate, and that there was a causal link between

their inaction and Plaintiff's injury. See Shaw v. Stroud, 13 F.3d 791, 799-800 (4th Cir. 1994). Plaintiff has presented no such evidence; thus, Gordon, Sims, and Hamrick could not be held liable in this case under a theory of supervisor liability. For the reasons stated, Gordon, Sims, and Hamrick are entitled to summary judgment. Plaintiff's failure to protect claim related to the removal of his mattress is **DISMISSED with prejudice**.

      C.      Defendant Earley's Deliberate Indifference to Plaintiff's Health or Safety

Defendant Earley contends that she is entitled to summary judgment as to Plaintiff's claim against her for deliberate indifference to Plaintiff's health or safety. The Court agrees. Here, there was a single interaction between Plaintiff and Defendant Earley – a medical evaluation on February 17, 2009, two days after the fight between Plaintiff and Hopper. Plaintiff contends that Defendant Earley violated his constitutional rights by failing to ensure that Plaintiff had access to a mattress in his cell during the daytime because of his back problems. The decision to take away Plaintiff's mattress, however, was the prison administrators', not Earley's, and Earley attested that she did not believe she had the authority to override disciplinary measures instituted by prison administrators. (Doc. No. 36: Aff. of Earley at ¶ 7). Here, because Earley was not involved in the decision to remove Plaintiff's mattress, she cannot have been deliberately indifferent to Plaintiff's health or safety.

Plaintiff takes issue with Earley's contention that when she evaluated Plaintiff, she saw no evidence establishing any medical need for Plaintiff to have access to a mattress during the daytime. As noted, supra, Plaintiff has attached a grievance that he filed with the jail on January 29, 2009, in which Plaintiff complains about back problems and states that his problems were exacerbated when the jail took his mattress away on a prior date. Plaintiff notes that Earley signed this grievance. Therefore, Plaintiff contends, Earley did know about Plaintiff's back problems and

13

his need to have a mattress 24 hours per day. Even accepting Plaintiff's contention as true, he has not raised an issue of a disputed <u>material</u> fact with regard to his deliberate indifference claim against Earley. That is, regardless of what Earley knew about Plaintiff's need for a mattress in his cell, Early is not the one who ordered the mattress removal.

In sum, the undisputed evidence establishes that Earley evaluated Plaintiff in response to his request on February 17, 2009, and Earley had no input into the decision to remove Plaintiff's mattress. Therefore, the Court finds that Earley was not deliberately indifferent to Plaintiff's health or safety, and Earley is entitled to summary judgment.

## IV. CONCLUSION

In sum, for the reasons stated herein, Defendants are entitled to summary judgment.[6]

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions for Summary Judgment, (Doc. Nos. 25; 34), are **GRANTED**;

2. Defendant Earley's Amended Motion Protective Order, (Doc. No. 40), is **DENIED** as **MOOT**.

3. The Complaint is **DISMISSED**. Because Plaintiff did not exhaust his administrative remedies with respect to the failure to protect claim related to the fight with Hopper, that claim is dismissed without prejudice.[7] Plaintiff's deliberate

---

[6] Defendants also contend that they are entitled to qualified immunity. Because the Court has found that Defendants did not violate Plaintiff's constitutional rights in the first instance, the Court does not need to address the issue of qualified immunity. See <u>Yacovelli v. Moeser</u>, 324 F. Supp. 2d 760, 765 (M.D.N.C. 2004) ("Because, as previously discussed, no constitutional deprivation has been alleged, the Court need not address whether Defendants are entitled to qualified immunity.").

[7] The dismissal is effectively with prejudice because Plaintiff is no longer housed at the Jail Annex.

indifference claim related to confiscation of his mattress is dismissed with prejudice.

Signed: March 27, 2012

Robert J. Conrad, Jr.
Chief United States District Judge